UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ORVAL FRAZIER,

        Plaintiff,

    v.

HAROLD CLARKE *et al*.,

        Defendants,

Case No. C07-5691FDB/JKA

REPORT AND RECOMMENDATION

**NOTED FOR**:
**August 29, 2008**

This 42 U.S.C. § 1983 Civil Rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4. Plaintiff has been granted *in form pauperis* status (Dkt # 4). Defendants move for summary judgment (Dkt. # 31 and 34). Plaintiff did not respond to the motions, instead, he asked for a six-month extension of time (Dkt. # 36). Defendants oppose plaintiff's motion (Dkt # 37 and 38). Plaintiff alleges he has had surgery and now needs chemotherapy for cancer. Plaintiff did not conduct any discovery during the six-month time frame allowed by the court. Further, defendants have submitted expert medical testimony that there is no causal link between the medical condition and treatment plaintiff complains of, and his injury to his eye sight. Plaintiff's motion for a continuance has been denied in a separate order.

Having reviewed the complaint, the motions for summary judgment, and the remainder of the record, the court recommends the motions for summary judgment be **GRANTED** and this action **DISMISSED WITH PREJUDICE.**

REPORT AND RECOMMENDATION
Page - 1

## FACTS

Plaintiff alleges as follows:

> April, 2005, I was initially seen by P.A. Thompson for an inexplicable inflamation of my left eye. I was prescribed an antibiotic ointment to no effect.
>
> On 4 May, 2005, I returned to Mr. Thompson and received chlorpheniramine maltese and Visine. Both of these are antihistamines.
>
> On 25 May, 2005, I saw Mr. Thompson again and he referred me to Dr. Betts, D.O..
>
> On 11 June, 2005, I saw Dr. Betts who correctly diagnosed iritis and treated with prenisolone drops to good response.
>
> On 16 July, 2005, I rechecked with Dr. Bretts and was told then that he would check my eyes the following month and that my current treatment would easily last that long. At the same visit he told me to continue the drops even if the eye seemed healed. I was not allowed to see Dr. Betts or to renew my medications until the 22nd of January 2006. By that time my eye was severely inflamed. During this six-month interim, I sent several kites (requests) to both Dr. Betts and P.A. Thompson, but received no satisfactory response. I also sent a letter on 5 December, 2005, to Ms. Anita Travis, the Health Care Manager here at Stafford Creek at the time, from her I received no response until 26 January, 2006, after I filed a grievance on 27 December, 2005. Her only response was to say I would see Dr. Betts the following month. On 1 January, 2006, I did see Dr. Betts, who diagnosed a return of the irits[sic] but with a concomitant anterior uveitis and synechia caused from a lack of treatment over the preceding six months.
>
> On 30 January, 2006, I received my new prescription but was required to see Dr. Betts twice more before finally being allowed to see a qualified Ophthalmologist, Dr. Estalilla. My grievance of 27 December, 2005, requested immediate referral to an ophthalmologist. This did not happen until April, of 2006. At that visit, Dr. Estalilla diagnosed a severely detached retina with considerable scarring that formed over the previous six months. This condition has led to three surgeries and almost complete loss of sight in my right eye. It is my contention that, if I had gotten proper continuous treatment for the initial iritis, I would still have sight in my eye and would not have gone through the considerable pain and anguish I have been subjected to.

(Dkt. # 5, complaint).

Dr. Betts has moved for summary judgment separate from the other defendants (Dkt # 31). Dr. Betts is a contract Optometrist who provides treatment four days a month to inmates at the Stafford Creek Corrections Center. Dr. Betts states he saw plaintiff twice in June 2005, for an eye infection and that he diagnosed plaintiff as having iritis (Dkt. # 34, page 2). Dr. Betts states he saw plaintiff twice in June and twice in July and that by the end of July the iritis had "largely cleared up." (Dkt # 34, page 2). Dr. Betts indicates he recommended one more visit as a follow up and made a notation on the chart and the schedule. He indicates this is his standard procedure.

Dr. Betts states that plaintiff was not seen by him again until the following January but that he does not know why there was not a final follow up visit and he does not do the scheduling. Dr. Betts states in January of

REPORT AND RECOMMENDATION
Page - 2

1  2006, plaintiff had a recurrence of the iritis and that this condition is called "concomitant anterior uveitis" (Dkt
2  # 34, page 2). Dr. Betts alleges he again provided treatment but by March of 2006, he suspected plaintiff had
3  developed a different condition, detached retinas, cataracts, or both. Dr. Betts alleges he referred plaintiff to an
4  ophthalmologist (Dkt. # 34, page 2).

5  Dr. Betts states the medical record shows that after his referral a cataract was removed and a detached
6  retina reattached. He further states the retina again became detached and plaintiff lost vision in one eye (Dkt #
7  34, page 2). Dr. Betts testifies he does not receive "kites" from inmates, does not handle the schedule as to
8  whom he sees, and provided proper treatment to the plaintiff. Further, Dr. Betts states iritis does not lead to
9  detached retinas (Dkt. # 34, page 3).

10  The remaining defendants also move for summary judgment (Dkt # 31). They argue plaintiff received
11  proper treatment for iritis in 2005. Defendants provide the expert testimony of Ophthalmologist Richard
12  Besinger in support of that contention. Dr. Besinger also testifies there is no causal link between plaintiff's
13  iritis and the detached retina which led to loss of vision in one eye (Dkt # 32)

## STANDARD OF REVIEW

15  Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings,
16  depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there
17  is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.
18  R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails
19  to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden
20  of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

21  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational
22  trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
23  586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some
24  metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact
25  exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve
26  the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec.
27  Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

28  The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial,

REPORT AND RECOMMENDATION
Page - 3

e.g. the preponderance of the evidence in most civil cases.  Anderson, 477 U.S. at 254; T.W. Elec. Service Inc., 809 F.2d at 630.  The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradicts facts specifically attested by the moving party. Id.

The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in hopes that evidence can be developed at trial to support the claim.  T.W. Elec. Service Inc., 809 F.2d at 630 (relying on Anderson, *supra*).  Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed."  Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

## DISCUSSION

The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases.  Anderson, 477 U.S. at 254; T.W. Elec. Service Inc., 809 F.2d at 630.  The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradicts facts specifically attested by the moving party. Id.  Plaintiff has failed to come forward with admissible evidence to contradict defendant's contention. Defendants have provided evidence showing that his medical treatment was appropriate, and that plaintiff's loss of vision and retina detachment was unrelated to the iritis.  Defendants are entitled to summary judgment.

This action should be **DISMISSED WITH PREJUDICE**.  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **August 29, 2008**, as noted in the caption.

DATED this 11 day of August, 2008.

> /S/ *J. Kelley Arnold*
> J. Kelley Arnold
> United States Magistrate Judge